Pamela L. Kingsley (SBN 004226)

**TB  TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9239
TELEPHONE: (602) 255-6015
FACSIMILE:  (602) 255-0103
EMAIL:  plk@tblaw.com

***Attorneys for Plaintiff Sandra S. Hoppmann***

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra S. Hoppmann,<br><br>                    Plaintiff,<br><br>        v.<br><br>Pampered Pets & Plants, Inc., an Arizona corporation; and Susan Hall, aka Susan Chamberlaine Luffey,<br><br>                    Defendants. | No. CV-22-00427-PHX-DWL<br><br>**AMENDED COMPLAINT**<br><br>(Jury Trial Demanded)<br><br>(Honorable Dominic W. Lanza) |

        This is an action for violations of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201, *et seq.,* the Arizona's Wage Act, A.R.S. § 23-350, *et seq.,* ("the AWA"), including the Arizona Minimum Wage Act, A.R.S. § 23-362, *et seq.* ("the AMWA"), and the Fair Wages and Healthy Family Act, A.R.S. § 23-364 & A.R.S. § 23-371, *et seq.* Plaintiff Sandra S. Hoppmann ("Hoppmann"), by and through her attorneys, Tiffany & Bosco, P.A., brings this action against Defendants Pampered Pets & Plants, Inc. ("PPP"), and Susan Hall, aka Susan Chamberlaine Luffey ("Hall").  Defendants engaged in unlawful employment practices with respect to those statutes by unlawfully failing to pay Hoppmann wages as an employee pursuant to the requirements of the FLSA and the Arizona Wage

1

4SS460402.DOCX

Statutes, which in turn, meant that Hoppmann was not paid minimum wage on various occasions, failing and refusing to pay overtime compensation, and failing and refusing to provide earned paid sick time benefits under the FWHFA.

## PARTIES AND JURISDICTION

1.      Hoppmann was an employee of Defendants within the meaning of 29 U.S.C. § 203(e)(1) and A.R.S. §§ 23-362(A) & 371(F).

2.      Hoppmann and Hall are residents of Maricopa County, Arizona.

3.      Hall exercised managerial control over Hoppmann by hiring Hoppmann, determining the rate and method of Hoppmann's compensation and Hoppmann's schedule, and maintaining employment records.  Hall is an "employer" as that term is defined in 29 U.S.C. § 203(d) and A.R.S. §§ 23-362(B) & 371(G).

4.      PPP is an Arizona corporation and maintains its headquarters at 901 E. Utopia Road, Phoenix AZ 85024.

5.      At all relevant times, PPP, which operates a pet sitting business, was doing business in Arizona.

6.      PPP exercised managerial control over Hoppmann by determining the rate and method of Hoppmann's compensation and maintaining existing employment records.  PPP is an "employer" as defined in 29 U.S.C. § 203(d) and A.R.S. §§ 23-362(B) & 371(G).

7.      Upon information and belief, there is such a unity of interest between Hall and PPP such that the individuality or the separateness of the two has ceased to exist.

8.      Further, at all relevant times hereto, Defendants have been an enterprise within the meaning of 29 U.S.C. § 203(r).

9.      Hall and PPP acted in direct interest of one another during Hoppmann's employment and were not completely disassociated with respect to Hoppmann's employment and control over Hoppmann.  Hence, Defendants were "joint employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2(b), and A.R.S. § 23-362(B).

4SS460402.DOCX

10.     At all relevant times, Hoppmann, in Hoppmann's work for Defendants, was engaged in commerce or the production of goods for commerce.

11.     Defendants are engaged in commerce or in the production of goods for commerce and/or they handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and, upon information and belief, the enterprise's annual gross value of sales or business done exceeds $500,000.  Hence, Defendants are engaged in commerce within the meaning of 29 U.S.C. § 203(s).

12.     This Court has subject matter jurisdiction of Hoppmann's claims.

13.     Venue is proper in Maricopa County, Arizona, per A.R.S. § 12-401, as all acts were committed within it, and it is where the individual parties reside and the corporation operates.

14.     When Hoppmann initially filed in the Superior Court of Maricopa County, Arizona, Hoppmann posited that this case should be considered a "Tier 2" case for purposes of case assignment under Rule 26.2, Ariz.R.Civ.P.

## FACTUAL ALLEGATIONS

15.     Defendants operate a pet sitting business in Phoenix, Arizona, through a legal fiction known as Pampered Pets & Plants, Inc.

16.     Hoppmann was employed by Defendants in Maricopa County, Arizona as a pet sitter for ten years, ending on December 26, 2021.

17.     Because PPP refused to pay Hoppmann any money for the pay period ending November 10, 2021, Hoppmann did file a complaint with the Labor Department of the Industrial Commission of Arizona.  That matter is currently pending.

18.     During the period of Hoppmann's employment, Hoppmann entered the homes of clients of PPP and would perform certain tasks during clients' absences.  Aside from feeding the clients' pets, Hoppmann would perform a home security check, collect newspapers and mail, attend to indoor and outdoor plants, take care of refuse (collecting and disposing), and perform pool maintenance.  Hoppmann's responsibilities included writing

3

4SS460402.DOCX

and leaving notes for clients of PPP and providing dates and times to PPP along with whatever additional notes may be needed for it.

19.     To perform these tasks, Hoppmann would travel from Hoppmann's residence to the location designated as PPP's primary location at 901 E. Utopia Road ("PPP's primary location"), a distance of about 19 miles, taking approximately 35 to 45 minutes.  Hoppmann is not seeking compensation with respect to travel to or from Hoppmann's own residence at the beginning of the day, or at the conclusion of a day.

20.     From PPP's primary location, Hoppmann would travel to PPP's clients' homes – sometimes back and forth during the day.  Sometimes, Hoppmann would spend the night at a client's home, performing PPP-designated tasks on behalf of the client, leaving the home from time to time to go to the home of another client; and sometimes to the homes of other clients.

21.     For these services, PPP unilaterally paid Hoppmann various amounts, in part, dependent upon the amount charged clients by PPP.

22.     Hoppmann does not possess complete time or payroll records, but is able to testify truthfully regarding the information alleged herein regarding the dates, times, clients, and services rendered.  They represent Hoppmann's best recollection as supported by the documentation in Hoppmann's possession.  Hoppmann alleges that they are Hoppmann's reasonably accurate, good faith calculation and summary of the hours she worked during the specifically identified workweeks.  The information provided is what was typical of Hoppmann's employment, although the amount of services and hours varied, depending on the week and client need.

23.     For example, Hoppmann performed services for clients [ES], [TK], [JH], and [DW] during the week of July 25, 2021 through July 31, 2021, for over 100 hours, excluding travel time, which exceeded three hours.

24.     For example, including taking a pet to a veterinarian and to the vet pharmacy, Hoppmann performed services for clients [ES], [TK], [JH], [DW], [HB], [MO], [CD], [DG],

4

4SS460402.DOCX

[BS], and [KQ] during the week of August 1, 2021 through August 7, 2021, for over 85 hours, excluding compensable travel time, which exceeded six hours.

25.     For example, Hoppmann performed services for clients [HB], [MO], [CD], [DG], [BS], and [KQ] during the week of August 8, 2021 through August 14, 2021, for over 95 hours, excluding compensable travel time, which exceeded four hours.

26.     By email message sent to Hall at 11:06 AM on November 30, 2021, Hoppmann identified the visits she had made to the homes of PPP clients, as directed by Defendants.  The clients' initials (in brackets) have been substituted for the clients' name:

> [SD]  Oct 15, 10am to Oct 17th, 10am. 2 live-ins, plus G/A*
> [RL] Oct 17 and 19, 2 -1/2 hr visits, Oct 18 -22, 5-1 hr visits
> [JI] Oct 22 to Oct 24. 2 overnights, Oct 22, 23 - 2 visits, plus G/A.
>
> I have finished with:
>
> [KL] Nov. 2, 1 hr visit, Nov 10 - 1 visit, Nov 15, 1 visit. 1 - 1hr visit, plus 2 visits.
> Nov 20, 10am to Nov 21, 10am - 1 live-in
> Nov 27, 11:05am, to Nov 30, 11:05am. 3 live-ins.
>
> [TM] Nov 22, pm, 23-25 a/p, 26 am. 8 visits
> [BS] Nov 23-26. 4 visits (I am sure he will tip $15 as always, and I will follow up with him)
> [CD] Nov 23, 3 pm to Nov 27, 11am. 4 live-ins.
> [CD] Nov 27, 6pm 1 hr visit, Nov 27, 10pm visit, Nov 28, 6am - 1hr visit, Nov 28, 1 pm - visit. 2 - 1hr visits, plus 2 visits. Extra visits.**

> *        "G/A" stands for "get acquainted," a visit to introduce the pet sitter on one hand and the client and pet on the other.
> **      The "[e]xtra visits" were required because of flight/travel issues.

27.     For example, Hoppmann performed services for clients [HB], [CD], [BS], [TM], and [KL] during the week of November 21, 2021 through November 27, 2021, for over 85 hours, excluding compensable travel time, which exceeded four hours.

4SS460402.DOCX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28.    For example, Hoppmann performed services for clients [HB], [CD], and [KL] during the week of November 28, 2021 through December 4, 2021, for over 45 hours, excluding compensable travel time, which exceeded a half hour.

29.    The compensation PPP agreed to pay Hoppmann varied.  In 2019, Hoppmann's rate was set $12.50 for a half hour.  But when Hoppmann worked two ½ hours together for a total of an hour, PPP would not pay the full rate, but would pay only $17.50 – for the same services for which Defendants had agreed to pay $12.50 for a half hour (an hourly wage of $25).  Further, there were many occasions where PPP did not pay Hoppmann even that amount, including when compensation for a certain client was set by Defendants at $11 regardless of the visit's length.  Instead, where the services were rendered in conjunction with "live-in" or "over-night" services, PPP paid only $42.50 for 12 hours of work or $55 for 18 hours of work, both of which were well below minimum wage.  This occurred regardless of whether Hoppmann was entitled to overtime pay.

30.    The compensation PPP agreed to pay Hoppmann increased during the summer/fall of 2021 when PPP set Hoppmann's rate to $13.50 for a half hour. But, again, when Hoppmann worked two ½ hours together for a total of an hour, PPP would not pay the full rate, but would pay only $20.00 – for the same services for which Defendants had agreed to pay $13.50 for a half hour (an hourly wage of $27).  Again, there were many occasions where PPP did not pay Hoppmann as promised.  Instead, where the services were rendered in conjunction with "live-in" or "over-night" services, PPP paid only $50 for 12 hours of work or $70 for 18 hours of work.  Further, there were clients where because PPP had not increased the rate for the client, Defendants did not pay Hoppmann her increased hourly rate.   These failures to pay Hoppmann her revised hourly wage occurred regardless of whether Hoppmann was entitled to overtime pay.

31.    Hoppmann was not properly compensated for all the hours, regular and overtime, worked by Hoppmann.

4SS460402.DOCX

32.    Defendants did not pay Hoppmann for travel time from the primary location to clients' residences or between any of those residences.

33.    Defendants informed Hoppmann that Hoppmann that would be paid mileage, but that occurred only sporadically.  Defendants did not pay Hoppmann consistently for mileage/gas.  Sometimes Hoppmann did receive a small amount of compensation for mileage/gas – where the services were rendered in conjunction with "live-in" or "over-night" services – when the client would pay it.

34.    Defendants paid Hoppmann only a minimal amount for "Get Acquainted" visits – below minimum wage;  much less the agreed-upon rates described above.

35.    By text message sent to Hall at 10:07 AM on December 26, 2021, Hoppmann identified certain visits Hoppmann had made to the homes of PPP clients, as directed by Defendants, and submitted Hoppmann's resignation.  The clients' initials (in brackets) have been substituted for the clients' name:

> Final Susan,
>
> I finished with [RL]:
>
> December 23 -25. 3 visits.
>
> I also finished with [DG]: December 19p, 20-25a/p. 13 visits.
>
> I am leaving Pampered Pets effective immediately. I have filed complaints with the Arizona Department of Labor because you have not paid me since October. I will continue to file complaints until I am paid in full. You have really been a disappointment as an employer.
>
> Sandra Hoppmann

36.    In response to the resignation, among other things, Defendants, through Hall, threatened Hoppmann:  "Effectively immediately, should you provide pet sitting service to any PPP client's for the next two years, I will sue you in court and you will pay all attorney fees."

4SS460402.DOCX

37.     Defendants made this threat even though they knew that Hoppmann was not bound by any restrictive covenant and that they had no legal right to do so.

38.     Defendants engaged in the regular policy and practice of subjecting Hoppmann to their policy and practice of failing or refusing to pay Hoppmann one and one-half times Hoppmann's regular rates of pay for all time Hoppmann worked in excess of 40 hours per week, in violation of 29 U.S.C. § 207(a).

39.     Hoppmann was an employee of Defendants.  Hoppmann maintained an ongoing employment relationship with Defendants.  Hoppmann exercised no personal discretion over Hoppmann's compensation, duties, or schedule.  Furthermore, Hoppmann received Hoppmann's instructions regarding tasks from Defendants.

40.     Defendants failed to report the required paid sick time information on Hoppmann's regular paychecks as required by A.R.S. §23-375 (C) and A.A.C. § R20-5-1210 (A)(1) & (B)(13-16).  Additionally, Defendants failed to maintain proper payroll records showing the hours Hoppmann worked in conjunction with Hoppmann's accrued paid sick time.

41.     Failure to maintain proper payroll records creates a rebuttable presumption that Defendants did not pay the required earned paid sick time pursuant to A.R.S. §23-364 (D).  As a result, Hoppmann is entitled to recover the balance of paid sick time owed, including interest thereon, and an additional amount equal to twice the amount owed pursuant to A.R.S. §23-364 (G).

42.     Defendants failed to post notice in the workplace of Hoppmann's rights and to provide Hoppmann with a written notice of Hoppmann's rights under the FWHFA in violation of A.R.S. §§ 23-364(D) and 375(A).  As a result, Defendants are subject to a civil penalty of at least $250 for their first violation and at least $1,000 for each subsequent and willful violation of the record keeping requirements pursuant to A.R.S §§ 23-364(F) and 375(E).

4SS460402.DOCX

43.    During the relevant period, Hoppmann attended scheduled medical appointments where PPP would have been obligated to pay for the time she was unable to work had PPP adopted, implemented, and followed a sick time policy as required by law. Hoppmann estimates that during 2018, 2019, 2020, and 2021, there were 12 to 23 instances yearly, requiring her to miss up two to three hours each.

44.    Upon information and belief, Defendants are sophisticated business owners. Therefore, Defendants knew or reasonably should have known they were required to pay Plaintiff in accordance with the FLSA provisions.

45.    Defendants refused or failed to properly disclose or apprise Hoppmann of Hoppmann's rights under the FLSA.

46.    Defendants failed to post and keep posted in a conspicuous place the required poster or notice explaining their employees' rights under the FLSA pursuant to 29 C.F.R. § 516.4. Nor did Defendants take any other steps to make certain Hoppmann was aware of her rights.

47.    Defendants' refusal to comply with the FLSA was willful.

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF THE FAIR LABOR STANDARDS ACT (FAILURE TO PAY FEDERAL OVERTIME WAGES)

48.    Hoppmann realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

49.    The FLSA prohibits employers from employing their employees for a workweek longer than forty (40) hours unless the employee receives compensation at not less than one and one-half times the regular rate at which he or she is employed.  29 U.S.C. § 207(a).

50.    At all times hereinafter mentioned, Hoppmann was an employee who was engaged in commerce as provided by 29 U.S.C. § 207.

9

51.     Defendants have violated 29 U.S.C. §§ 207 and 215(a)(2) by employing Hoppmann in an enterprise engaged in commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating Hoppmann for those additional hours at a rate one and one-half times the regular rate for which Hoppmann was employed.

52.     Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Hoppmann the proper amount of overtime compensation.  29 U.S.C. § 255(a).

53.     Upon information and belief, Defendants are sophisticated parties and employers and therefore knew – or should have known – their pay policies violated the FLSA.

54.     The decisions and practices by Defendants to not pay the proper amount of overtime for all hours worked were neither reasonable nor made in good faith.

55.     Accordingly, Hoppmann is entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA such that Hoppmann will have been compensated in an amount equal to one-and-a-half times Hoppmann's regular rate of pay.

56.     Hoppmann is entitled to attorneys' fees, costs, and other statutory damages pursuant to 29 U.S.C. § 216(b).

**COUNT II:  VIOLATION OF THE ARIZONA WAGE ACT
(FAILURE TO PAY ARIZONA WAGES)**

57.     Hoppmann realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

58.     At all relevant times, Hoppmann was employed by Defendants within the meaning of the Arizona Wage Statute.

4SS460402.DOCX

59.     Defendants intentionally failed or refused to pay Hoppmann full wages for time worked and services rendered according to the terms of her employment relationship with Defendants, which resulted in a violation of A.R.S. § 23-351 (C).

60.     Under the statute, employers are required to pay all wages owed within sixteen (16) days after the end of the pay period.  Currently, Hoppmann has not been appropriately compensated for all of Hoppmann's hours worked.

61.     Hoppmann is entitled to bring an action against Defendants to recover unpaid wages under A.R.S. § 23-355.

62.     Hoppmann is entitled to recover treble the amount of unpaid wages under A.R.S § 23-355(A).

63.     In addition to treble the amount of unpaid wages owed to Hoppmann, Hoppmann is entitled to an award of attorneys' fees pursuant to A.R.S. § 12-341.01 and costs pursuant to A.R.S. § 12-341.

### COUNT III:  VIOLATION OF THE ARIZONA MINIMUM WAGE ACT (FAILURE TO PAY ARIZONA MINIMUM WAGE)

64.     Hoppmann realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

65.     At all relevant times, Hoppmann was employed by Defendants within the meaning of the Arizona Minimum Wage Statute.

66.     Defendants intentionally failed or refused to pay Hoppmann full minimum wages according to the provisions of the Arizona Minimum Wage Statute.

67.     In addition to the amount of unpaid minimum wage owed to Hoppmann, Hoppmann is entitled to recover an additional amount equal to twice the underpaid wages and interest pursuant to A.R.S. § 23-364(G).

68.     Hoppmann also is entitled to an award of attorneys' fees and costs pursuant to A.R.S. § 23-364(G).

4SS460402.DOCX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT IV:  VIOLATION OF THE ARIZONA FAIR WAGES AND
HEALTHY FAMILIES ACT (FAILURE TO PROVIDE
PAID SICK TIME AND NOTICE OF RIGHTS)**

69.     Hoppmann realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70.     The FWHFA requires that employees shall accrue at least one (1) hour of earned paid sick time for every thirty (30) hours worked.  A.R.S. § 23-372(B).

71.     Under the FWHFA, employers must give employees written notice of employees' entitlement to paid sick time and their rights guaranteed under the FWHFA on the employee's commencement of employment.  A.R.S. § 23-375(A).

72.     At least since the effective date of the FWHFA on July 1, 2017, PPP has employed at least 15 workers at a time.

73.     Hoppmann was employed by Defendants during the relevant time period and was a covered employee entitled to the protections of A.R.S. §§ 23-372, 373-374(A), and 375.

74.     Defendants have violated A.R.S. § 23-372(A) by failing to maintain a paid sick time policy where Hoppmann could accrue paid sick time.

75.     Defendants have violated A.R.S. § 23-375(A) by failing to provide Hoppmann with written notice of Hoppmann's rights under the FWHFA at the time of Hoppmann's employment.

76.     The Industrial Commission of Arizona requires employers to pay employees for "all hours worked."  A.R.S. § 23-362; A.A.C. § R20-5-1206.  By implication, Hoppmann must accumulate paid sick time at a rate equivalent to "all hours worked."

77.     At all times relevant to the Complaint, Defendants have been an employer within the meaning of A.R.S. §§ 23-362(B) and 371(G).

78.     At all times hereinafter mentioned, Hoppmann was an employee within the meaning of A.R.S. §§ 23-362(A) and 371(F).

4SS460402.DOCX

79. Hoppmann is entitled to recover the balance of the earned paid sick time owed, including interest thereon, and an additional amount equal to twice that amount owed pursuant to A.R.S § 23-364(G).

80. Hoppmann suffered damages as a result of Defendants' illegal pay practices.

81. Defendants have violated A.R.S. § 23-375 (C) by employing Hoppmann in the state of Arizona and issuing paychecks without reporting the required information on them.

82. To the extent that Defendants failed to maintain proper payroll records showing Hoppmann's hours worked and earned paid sick time, there is a rebuttable presumption that Defendants did not pay the required earned paid sick time.  A.R.S. § 23-364(D).

83. Defendants are subject to a civil penalty of at least $250 for their first violation and at least $1,000 for each subsequent and willful violation of the record keeping requirements pursuant to A.R.S §§ 23-364(F) and 375(E).

84. Defendants willfully violated applicable Arizona law, and hence, a three-year statute of limitations applies to the commencement of this action. A.R.S. § 23-364(H).

## RELIEF SOUGHT

85. Hoppmann respectfully prays for judgment against Defendants as follows:

    a.    Declaring and finding Defendants committed the following acts:

        (i)    willfully violated overtime wage provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime;

        (ii)    willfully violated the Arizona Wage Act, A.R.S. §§ 23-351, *et seq.,* by failing to timely pay all wages due to Hoppmann;

        (iii)    willfully violated minimum wage provisions of the AMWA, A.R.S. §§ 23-362, *et seq.* by failing to pay minimum wages;

        (iv)    willfully violated the provisions of the FWHFA,  A.R.S. § 23-371, *et seq.,* by failing to provide written notice of the employees' rights and by failing to provide paid sick time; and

4SS460402.DOCX

b.   For an award of damages against Defendants for Hoppmann's unpaid overtime pay in an amount appropriate to proof adduced at trial pursuant to 29 U.S.C. §§ 207 and 216(b) for their having failed to pay proper overtime wages;

c.   For an award of liquidated damages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

d.   For an award of statutory penalties against Defendants of at least $250 for Defendants' first violation of A.R.S. § 23-364(C) and at least $1,000 for each subsequent and willful violation;

e.   For an award of damages against Defendants for Hoppmann's unpaid wages in an amount that is treble the amount of the unpaid wages, as appropriate to proof adduced at trial pursuant to A.R.S. § 23-355(A);

f.   For an award of damages against Defendants for the balance of Hoppmann's underpaid wages, including interest thereon, and an additional amount equal to the twice the underpaid wages, pursuant to A.R.S. § 23-364(G);

g.   For an award of damages against Defendants for Hoppmann's unpaid sick time, including interest thereon, and an additional amount equal to the twice the underpaid wages, pursuant to A.R.S. § 23-364(G);

h.   For an award directing all Defendants to pay the total amount due to Hoppmann, plus interest on any continuing amounts owed until paid in full;

i.   For an award to pay Hoppmann's reasonable attorney's fees and costs and expenses (not only statutory) against Defendants pursuant to 29 U.S.C. § 216(b), A.R.S. § 12-341, A.R.S. § 12-341.01,  and A.R.S. § 23-364(G);

14

4SS460402.DOCX

j.      In the event that Defendants fail to timely satisfy any judgment for Hoppmann, for an amount which is treble the amount of the outstanding judgment, with interest thereon, in accordance with A.R.S. § 23-360;

k.      For a declaratory judgment pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831, *et seq.,* that Defendants have violated Plaintiff's rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein; and

l.      For an Order granting such other and further relief as may be necessary and appropriate.

### DEMAND FOR JURY TRIAL

Hoppmann hereby requests that, upon trial of this action, all issues be submitted to and determined by a jury, except those issues expressly reserved by law for determination by the Court.

DATED this 7th day of April, 2022.



By: /s/ *Pamela L. Kingsley*
Pamela L. Kingsley
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-9239
***Attorneys for Plaintiff Sandra S. Hoppmann***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have no knowledge of any non-CM/ECF participants on the Manual Notice list and, therefore, have not mailed the foregoing document or paper via the United States Postal Service to anyone.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


By: ___/s/ Shari Hanger_____

4SS460402.DOCX