Douglas (Trey) Lynn, SBN 028054
Brendan A. Melander, SBN 034777
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ  85016
Telephone:   602-778-3700
Facsimile:   602-778-3750
trey.lynn@ogletree.com
brendan.melander@ogletree.com

*Attorneys for Pampered Pets &
Plants, Inc. and Susan Hall, aka
Susan Chamberlaine Luffey*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra S. Hoppmann, <br><br>             Plaintiff, <br><br>     v. <br><br> Pampered Pets & Plants, Inc., an Arizona corporation; and Susan Hall, aka Susan Chamberlaine Luffey, <br><br>             Defendants. | No.  CV-22-00427-PHX-DWL <br><br> **ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM** |
| Pampered Pets & Plants, Inc, an Arizona corporation, <br><br>             Counterclaimant, <br><br>     v. <br><br> Sandra S. Hoppmann, <br><br>             Counterdefendant. | |

Defendants Pampered Pets & Plants, Inc. ("PPP") and Susan Hall (collectively, "Defendants"), for their Answer to Plaintiff's Amended Complaint, state as follows:

//

//

**PARTIES AND JURISDICTION**

1. Defendants admit PPP employed Plaintiff. The remaining allegations in Paragraph 1 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

2. Defendants admit Susan Hall is a resident of Maricopa County, Arizona. Defendants lack information sufficient to respond to and thus deny the remaining allegations in Paragraph 2.

3. Paragraph 3 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

4. Defendants admit the allegations in Paragraph 4.

5. Defendants admit the allegations in Paragraph 5.

6. Paragraph 6 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

7. Defendants deny the allegations in Paragraph 7.

8. Paragraph 8 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

9. Paragraph 9 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

10. Paragraph 10 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

11. Paragraph 11 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

12. Defendants admit the allegations in Paragraph 12.

13. Defendants admit venue is proper and otherwise deny the allegations in Paragraph 13.

14. Paragraph 14 does not require a response. To the extent a response is required, Defendants deny the allegations.

## FACTUAL ALLEGATIONS

15. Defendants admit PPP operates a pet sitting business.

16. Defendants admit PPP employed Plaintiff as a pet sitter in Maricopa County, Arizona and her employment ended on or about December 26, 2021.

17. Defendants deny the allegations in Paragraph 17.

18. Defendants admit Plaintiff entered PPP's clients' homes and performed certain tasks during her employment. Defendants lack information sufficient to respond to the remaining allegations in Paragraph 18, and therefore deny the allegations.

19. Defendants deny the allegations in Paragraph 19.

20. Defendants deny that Plaintiff was required to travel to or from PPP's primary location to or from clients' homes. Defendants admit the remaining allegations in Paragraph 20.

21. Defendants admit Plaintiff was paid on a commission basis and otherwise deny the allegations in Paragraph 21.

22. Defendants lack information sufficient to respond to the allegations in Paragraph 22, and therefore deny the allegations.

23. Defendants deny the allegations in Paragraph 23.

24. Defendants deny the allegations in Paragraph 24.

25. Defendants deny the allegations in Paragraph 25.

26. Defendants admit that any emails speak for themselves and otherwise deny the allegations in Paragraph 26.

27. Defendants deny the allegations in Paragraph 27.

28. Defendants deny the allegations in Paragraph 28.

29. Defendants deny the allegations in Paragraph 29.

30. Defendants deny the allegations in Paragraph 30.

31. Defendants deny the allegations in Paragraph 31.

32. Defendants deny the allegations in Paragraph 32.

33. Defendants deny the allegations in Paragraph 33.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

34. Defendants deny the allegations in Paragraph 34.

35. Defendants admit that the alleged text message in Paragraph 35 speaks for itself, but deny the contents of the message and the remaining allegations.

36. Defendants deny the allegations in Paragraph 36.

37. Defendants deny the allegations in Paragraph 37.

38. Defendants deny the allegations in Paragraph 38.

39. Defendants admit Plaintiff was a PPP employee. Defendants deny the remaining allegations in Paragraph 39.

40. Paragraph 40 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

41. Paragraph 41 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

42. Paragraph 42 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

43. Defendants lack information sufficient to admit or deny the allegations in Paragraph 43, and therefore deny the allegations.

44. Defendants lack information sufficient to admit or deny the allegations in Paragraph 44, and therefore deny the allegations.

45. Defendants deny the allegations in Paragraph 45.

46. Paragraph 46 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

47. Defendants deny the allegations in Paragraph 47.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT (FAILURE TO PAY FEDERAL OVERTIME WAGES

48. Defendants incorporate by reference their preceding responses.

49. Paragraph 49 does not require a response. To the extent a response is required, Defendants deny the allegations.

4

50. Paragraph 50 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

51. Defendants deny the allegations in Paragraph 51.

52. Defendants deny the allegations in Paragraph 52.

53. Defendants deny the allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54.

55. Defendants deny the allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56.

## COUNT II: VIOLATION OF THE ARIZONA WAGE ACT
## (FAILURE TO PAY ARIZONA WAGES)

57. Defendants incorporate by reference their preceding responses.

58. Paragraph 58 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

59. Defendants deny the allegations in Paragraph 59.

60. Defendants deny the allegations in Paragraph 60.

61. Defendants deny the allegations in Paragraph 61.

62. Defendants deny the allegations in Paragraph 62.

63. Defendants deny the allegations in Paragraph 63.

## COUNT III: VIOLATION OF THE ARIZONA MINIMUM WAGE ACT
## (FAILURE TO PAY ARIZONA MINIMUM WAGE)

64. Defendants incorporate by reference their preceding responses.

65. Paragraph 65 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

66. Defendants deny the allegations in Paragraph 66.

67. Defendants deny the allegations in Paragraph 67.

68. Defendants deny the allegations in Paragraph 68.

## COUNT IV: VIOLATION OF THE ARIZONA FAIR
## WAGES AND HEALTHY FAMILIES ACT
## (FAILURE TO PROVIDE PAID SICK TIME AND NOTICE OF RIGHTS)

69. Defendants incorporate by reference their preceding responses.

70. Paragraph 70 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

71. Paragraph 71 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

72. Defendants admit the allegations in Paragraph 72.

73. Paragraph 73 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

74. Defendants deny the allegations in Paragraph 74.

75. Defendants deny the allegations in Paragraph 75.

76. Paragraph 76 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

77. Paragraph 77 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

78. Paragraph 78 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

79. Defendants deny the allegations in Paragraph 79.

80. Defendants deny the allegations in Paragraph 80.

81. Defendants deny the allegations in Paragraph 81.

82. Paragraph 82 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

83. Defendants deny the allegations in Paragraph 83.

84. Defendants deny the allegations in Paragraph 84.

## **RELIEF SOUGHT**

85. Defendants deny the allegations in Paragraph 85.

**GENERAL DENIAL**

Defendants deny all allegations and inferences of the Amended Complaint not expressly admitted in this Answer, deny acting unlawfully with respect to Plaintiff, and deny that Plaintiff is entitled to any damages or relief.

**AFFIRMATIVE DEFENSES**

For their affirmative defenses to the claims alleged by Plaintiff in the Amended Complaint, Defendants allege as follows:

1. Plaintiff's claims may be barred, in whole or in part, by her failure to state a claim upon which relief may be granted.

2. Plaintiff's claims may be barred, in whole or in part, to the extent that she has failed to comply with or meet the applicable statute of limitations, filing deadlines, or her claims are otherwise time-barred.

3. Plaintiff's claims may be barred, in whole or in part, to the extent she has failed to mitigate her damages.

4. Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver estoppel, unclean hands, and laches.

5. If Plaintiff sustained any damages, such damages were directly and proximately caused by Plaintiff's own acts, omissions, or conduct. To the extent that Plaintiff's damages, if any, were so caused, any recovery by Plaintiff is barred or alternatively must be reduced in proportion to such extent Plaintiff contributed to her own damages.

6. Plaintiff's claims may be barred because Plaintiff has suffered no injury or damages with respect to the facts alleged in the Amended Complaint.

7. To the extent Plaintiff asserts overtime claims under the Arizona Wage Act ("AWA"), those claims are preempted by the Fair Labor Standards Act ("FLSA").

8. Plaintiff was exempt from the overtime and minimum wage provisions of the FLSA under, 29 U.S.C. § 207, and the regulations promulgated thereunder, 29 C.F.R. Part 541.

7

9. Plaintiff is not entitled to a three-year limitations period under 29 U.S.C. § 255(a) because even if Plaintiff was able to prove an alleged violation of the FLSA, which Defendants expressly deny, any such violation was not willful within the meaning of the FLSA.

10. Plaintiff is not entitled to liquidated damages under 29 U.S.C. § 260 because, at all times relevant to this action, Defendants acted in good faith in conformity with and in reliance on written administrative regulations, orders, rulings, approvals, and/or interpretations of the United States Department of Labor and the Industrial Commission of Arizona and had reasonable grounds for believing it did not violate the provisions of the FLSA.

11. Plaintiff's claims for overtime compensation and liquidated damages are barred or subject to offset by all wages paid or other compensation provided.

12. Defendants are entitled to an offset or credit against any amounts due (which are denied) of an amount equal to the amount it paid, or overpaid, Plaintiff including, but not limited to, premium payments under 29 U.S.C. § 207(e).

13. The claims set forth in the Complaint are barred, in whole or in part, by the doctrine of payment because Plaintiff was properly compensated for all time worked in accordance with the FLSA and because she was paid for additional time including, without limitation, time paid but not worked by Plaintiff.

14. Plaintiff's claims for recovery of overtime compensation and liquidated damages are barred for hours allegedly worked without Defendants' actual or constructive knowledge.

15. The time for which Plaintiff seeks compensation is *de minimis*.

16. The preliminary and/or postliminary time for which Plaintiff seeks compensation is non-compensable. The claims for non-compensable time are barred by 29 U.S.C. § 254.

17. Some or all of the disputed time for which Plaintiff seeks recovery of wages purportedly owed was spent engaging in activities that were not compensable work under the FLSA and were not an integral and indispensable part of Plaintiff's principal activities.

18. Without assuming the burden of proof, Defendants complied with written regulations, orders, rulings, approvals, and interpretations of the United States Department of Labor, and all recordkeeping requirements of the Fair Labor Standards Act

19. Defendants are presently without information as to the availability and applicability of other affirmative defenses in addition to those pled above, but reserve the right to amend this Answer to plead any affirmative defenses or matters of avoidance required by Rules 8(c) and 12(h) of the Federal Rules of Civil Procedure that may be revealed as discovery progresses.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants respectfully request judgment in their favor as follows:

A. That the Complaint be dismissed with prejudice, with Plaintiff to take nothing thereby;

B. That Plaintiff take nothing by this action and that judgment be entered against Plaintiff and in favor of Defendants;

C. That Defendants be awarded their attorneys' fees and costs incurred in defending this action;

D. That Defendants be awarded post-judgment interest on the foregoing amounts at the maximum rate permitted by law; and

E. That Defendants be awarded such further relief as the Court deems just and proper.

## **COUNTERCLAIM**

Counterclaimant Pampered Pets & Plants, Inc. ("PPP"), by and through undersigned counsel, alleges the following against Counterdefendant Sandra S. Hoppmann ("Hoppmann").

9

**PARTIES, JURISDICTION, AND VENUE**

1. Upon information and belief, Hoppmann is a resident of Maricopa County, Arizona.

2. This Court currently has supplemental jurisdiction over this related counterclaim in accordance with 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Hoppmann because she resides in Maricopa County, Arizona.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Hoppmann resides in Maricopa County, Arizona.

**FACTUAL ALLEGATIONS**

5. Counterclaimant incorporates by reference its preceding responses.

6. Since 1984, Counterclaimaint has established itself as a prominent pet-sitting, house-sitting, and house maintenance business in Maricopa County, Arizona.

7. Counterclaimant has worked diligently over the years to develop its business including, without limitation, its ongoing relationships with customers and potential customers.

8. Counterclaimant offers exceptional customer service to its clients, by diligently scheduling daily visits, overnight stays, and live-in stays, as well as offering maintenance services.

9. To set it apart from its competitors, Counterclaimant makes substantial investments to develop its proprietary and trade secret business model, network of customer contacts, referral sources, employees, as well as scheduling, pricing, and business strategies that allow it to grow and maintain its business.

10. Moreover, there is significant competition among pet-sitting, house-sitting, and maintenance companies, and Counterclaimant takes considerable steps to protect its business from its competitors including, without limitation, vetting its employees through an extensive screening process, maintaining policies requiring scheduling and pricing to

flow exclusively through management, establishing privacy policies, and entering into individual contracts with its customers.

11. Hoppmann was employed by Counterclaimant for approximately ten (10) years.

12. During her employment, Hoppmann had access to Counterclaimant's customer contact lists, scheduling and pricing schedules, and other internal policies which permitted Counterclaimant to be competitive in the pet-sitting, house-sitting, and maintenance industry.

13. During her employment, Hoppmann was aware Counterclaimant's customer contact lists and pricing were confidential and proprietary.

14. During her employment, Hoppmann had access to Counterclaimant's customer contact lists and pricing.

15. During her employment, on multiple occasions, Counterclaimant had to inform Hoppmann that all scheduling and pricing needed to flow directly through Counterclaimant.

16. For example, on September 16, 2016, Counterclaimant informed Hoppmann that all scheduling needed to be booked directly through PPP.

17. On September 19, 2016, Hoppmann confirmed she was aware of Counterclaimant's scheduling policies, and that she disagreed with the policies.

18. During her employment, Hoppmann was aware of Counterclaimant's client payment policies which required all payments to be made directly through Counterclaimant.

19. During her employment, on multiple occasions, Hoppmann tried to bypass Counterclaimant's payment policies.

20. For example, in December 2018, Counterclaimant had payment and billing issues with a client due to Hoppmann failing to follow Counterclaimant's payment policies.

21. During her employment, Hoppmann was often insubordinate when interacting with Counterclaimant and Counterclaimant's customers.

22. For example, on August 22, 2019, Hoppmann disregarded a client's house-sitting instructions.

23. On December 20, 2021, Counterclaimant was forced to write a letter to Hoppmann regarding her failure to follow company policies.

24. On or about December 26, 2021, Hoppmann voluntarily resigned her employment.

25. Upon information and belief, before and after Hoppmann's resignation on December 26, 2021, Hoppmann used Counterclaimant's client and customer lists to contact Counterclaimant's clients.

26. Upon information and belief, before and after her resignation, Hoppmann began improperly soliciting Counterclaimant's clients.

27. Several of Counterclaimant's clients informed Counterclaimant that Hoppmann was attempting to solicit them for pet-sitting, house-sitting, or maintenance services.

28. Upon information and belief, several of Counterclaimant's clients now utilize Hoppmann for pet-sitting, house-sitting, or maintenance services.

29. Upon information and belief, before and after Hoppmann's resignation, Hoppmann defamed Counterclaimant.

30. Hoppmann made false written or oral statements about Counterclaimant's reputation, business practices, and treatment of its employees.

31. Several of Counterclaimant's clients informed Counterclaimant that Hoppmann falsely made statements regarding Counterclaimant's integrity, false or improper business practices, and unfair treatment of its employees.

32. Hoppmann's false written or oral statements harmed Counterclaimant's reputation.

33. Upon information and belief, several of Counterclaimant's clients no longer work with Counterclaimant as a direct result of Hoppmann's defamatory statements.

34. Upon information and belief, Counterclaimant lost future business due to Hoppmann's defamatory statements.

35. Following Hoppmann's voluntary resignation, she refused to return certain items of property that Counterclaimant had a right to possess.

36. Following Hoppmann's voluntary resignation, Hoppmann refused to return various clients' property.

37. Following Hoppmann's voluntary resignation, she did not have a right to possession or control of Counterclaimant's property or clients' keys.

38. Counterclaimant had a right to control and possession over the various clients' keys.

39. On or about January 14, 2022, Counterclaimant was forced to send a letter to its clients informing them of Hoppmann's improper possession of Counterclaimant's and clients' property.

40. Counterclaimant was forced to pay for locksmiths to replace various keys for clients.

41. Counterclaimant also suffered damages to its reputation as a result of Hoppmann's improper possession of property and keys.

## COUNT I
## (**VIOLATION OF DEFEND TRADE SECRETS ACT**)

42. Counterclaimant incorporates by reference its preceding allegations.

43. During the course of her employment with Counterclaimant, Hoppmann was provided access to Counterclaimant's confidential information including, without limitation, Counterclaimant's trade secrets and other Protected Information such as its network of customer contacts, referral sources, employee training and retention strategies, as well as scheduling, pricing, and other business strategies.

44. Counterclaimant's confidential information is not available to the general public and is closely guarded by Counterclaimant.

13

45. Counterclaimant keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

46. Counterclaimant's confidential information including, without limitation, its Protected Information, is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq*. ("DTSA"), because the information is not generally known outside of Counterclaimant's business, Counterclaimant has taken reasonable measures to guard the secrecy of the information, the information is of great value to Counterclaimant and its competitors, Counterclaimant invested significant amounts of time and money in developing the information, the information cannot be easily acquired or duplicated by others, and because Counterclaimant continuously uses the information in its business.

47. The trade secret information that Hoppmann misappropriated from Counterclaimant is used in interstate commerce.

48. Hoppmann had obligations to keep Counterclaimant's confidential information and Proprietary Information private, to refrain from using or disclosing confidential information for the benefit of others including, but not limited to, herself, and to return Counterclaimant's confidential information and Proprietary information immediately upon resignation of her employment.

49. However, Hoppmann has ignored (and continues to ignore) such obligations and misappropriated Counterclaimant's confidential information for her own benefit, intending to cause injury and damage to Counterclaimant.

50. Upon information and belief, Hoppmann is continuing to use Counterclaimant's confidential information and Proprietary information on behalf of her own pet-sitting, house-sitting, or maintenance business.

51. Unless restrained, Hoppmann will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Counterclaimant's confidential information.

52. Hoppmann's actions have also damaged Counterclaimant's goodwill, reputation, and legitimate business interests.

53. Counterclaimant is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Hoppmann's wrongful misappropriation of Counterclaimant's confidential information.

## COUNT II
## (VIOLATION OF ARIZONA UNIFORM TRADE SECRETS ACT)

54. Counterclaimant incorporates by reference its preceding allegations.

55. Counterclaimant takes reasonable steps to keep its confidential information safe and to safeguard it from unlawful misappropriation.

56. Counterclaimant protects its confidential information by, among other things, requiring password protection on company computers, computer networks, and information technology systems, and requiring all scheduling and payments to be processed through Counterclaimant's owner.

57. As a result of her position of trust within PPP, Hoppmann had access to Counterclaimant's Protected Information and other confidential, proprietary, and trade secret information.

58. This information is all valuable because it is not generally known and it would allow competitors to directly compete with Counterclaimant and/or gain a competitive edge over Counterclaimant.

59. Accordingly, Counterclaimant's Protected Information is properly defined as a trade secret under the Arizona Uniform Trade Secrets Act, A.R.S. §§ 44-401 to 407.

60. Hoppmann acquired access to Counterclaimant's trade secret information under circumstances giving rise to a duty to maintain the secrecy, and limit the use, of this trade secret information, which she had acquired as a result of her employment with Counterclaimant.

61. Hoppmann exceeded her authorized access to Counterclaimant's trade secret information by, among other things, accessing, using, and/or copying the trade secret information described above.

15

62. Hoppmann's conduct constitutes improper acquisition, use and the misappropriation of trade secrets in violation of the Arizona Uniform Trade Secret Act.

63. Counterclaimant is entitled to compensatory damages as a result of Hoppmann's conduct.

64. Moreover, Hoppmann willfully and maliciously acquired Counterclaimant's trade secrets, entitling Counterclaimant to exemplary damages and attorneys' fees in accordance with A.R.S. § 44-403 and § 44-404.

## COUNT III
### (TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY)

65. Counterclaimant incorporates by reference its preceding allegations.

66. Counterclaimant had customer contracts, as well as ongoing business relationships and expectations of maintaining the same with respect to its customers.

67. Hoppmann knew about these contracts, relationships, and expectancies.

68. In fact, while Hoppmann was employed by Counterclaimant, she was aware of various contracts with clients, the pricing of such contracts, and interacted with Counterclaimant's clients in furtherance of Counterclaimant's business relationships and expectancies.

69. Hoppmann intentionally interfered with Counterclaimant's business relationships and expectations when she contacted Counterclaimant's clients and attempted to divert the business to herself.

70. Hoppmann's conduct was improper and caused damages to Counterclaimant in an amount to be proven at trial.

71. Hoppmann's conduct was willful, malicious, carried out with an evil mind, and/or performed with a conscious disregard of the substantial risk of harm to Counterclaimant, thereby entitling Counterclaimant to an award of punitive damages.

72. Hoppmann's tortious interference has caused, and will continue to cause, Counterclaimant to suffer irreparable harm including, without limitation, loss of customers,

16

confidential and proprietary information, goodwill and reputation, and fair competition and competitive advantage.

## COUNT IV
## (DEFAMATION)

73. Counterclaimant incorporates by reference its preceding allegations.

74. Hoppmann made false written or oral statements about Counterclaimant's reputation, business practices, and treatment of its employees.

75. Hoppmann knew or had reason to know that falsely claiming Counterclaimant's policies and pay practices were unfair to its employees and would damage Counterclaimant's professional reputation.

76. Hoppmann's conduct was willful, malicious, carried out with an evil mind, and/or performed with a conscious disregard of the substantial risk of harm to Counterclaimant, thereby entitling Counterclaimant to an award of punitive damages.

77. As a direct and proximate cause of Hoppmann's defamatory statements, Counterclaimant has suffered damages including, but not limited to, loss of customers, goodwill, reputation, and fair competition and competitive advantage.

## COUNT V
## (CONVERSION)

78. Counterclaimant incorporates by reference its preceding allegations.

79. Under Arizona law, conversion is an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.

80. As described above, Hoppmann has converted Counterclaimant's property including, but not limited to, Counterclaimant's Protected Information, clients' keys, and other property.

81. Hoppmann's conduct, as referenced above, constitutes conversion of materials, documents and physical property that belong to Counterclaimant.

82. Hoppmann's conduct was improper and caused damages to Counterclaimant in an amount to be proven at trial.

17

83. Hoppmann's conduct has resulted, and will continue to result, in irreparable harm and damage to Counterclaimant including, but not limited to, loss of its competitive advantage, loss of business, loss of goodwill, loss of confidentiality, loss of income, and/or damage to its reputation.

## **RELIEF REQUESTED**

WHEREFORE, Counterclaimant asks that the Court enter judgment in its favor and against Hoppmann, and further requests the Court to:

A. Award Counterclaimant such damages as may be proven at trial including, without limitation, compensatory damages, exemplary damages, punitive damages, and treble damages, plus interest, costs, and attorneys' fees;

F. Award Counterclaimant post-judgment interest on the foregoing amounts at the maximum rate permitted by law; and

B. Award Counterclaimant such other and further relief as this Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Counterclaimant demands a trial by jury as to all claims triable by jury.

DATED this 21st day of April 2022.

          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

          By:   /s/ Douglas (Trey) Lynn
                  Douglas (Trey) Lynn
                  Brendan A. Melander
                  2415 E. Camelback Road, Suite 800
                  Phoenix, AZ 85016

                  Attorneys for Defendants

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700